UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RODNEY COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16 CV 1521 RWS |
| | ) | |
| CITY OF ST. LOUIS, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Defendant the City of St. Louis (the "City") moves for summary judgment on plaintiff Rodney Cooper's claim of unlawful employment discrimination. (No. 45). The City argues that Cooper has suffered no adverse employment action, that he has failed to exhaust his administrative remedies on his hostile work environment and retaliation claims, and that he cannot prove the required elements of his claims. Because Cooper has no evidence to prove that he suffered an adverse employment action, I will grant summary judgment on his discrimination claim. I will also grant summary judgment on his retaliation claim, because Cooper did not present it in his charge to the Equal Employment and Opportunity Council (EEOC). Cooper, however, presents enough evidence that a jury could find that he suffered from a hostile work environment, a claim that he presented to the EEOC. As a result, I will deny the City's motion for summary judgment on Cooper's hostile work environment claim alone.

### BACKGROUND

Plaintiff Rodney Cooper works as a utility worker in the City's public parks system. (No. 47-2 at 2). From September 2011 through August 2015, Cooper performed this job in a crew dedicated to maintaining Forest Park. In this position he was directly supervised by non-party

Ricky Hahn, who in turn was directly supervised by Roger Berry. Plaintiff Cooper testified that he experienced a religious conversion in 2013, (Cooper Depo., No. 61-2 at 12), and that, from that point forward, he frequently talked about religion with coworkers, predominantly in the lunchroom before work started. (Plaintiff's Statement of Facts, ¶ 47-49).

Cooper and Berry clashed over Cooper's religious conversations in the workplace. Berry's office is adjacent to the lunchroom, where Cooper would have many of his conversations about religion. When Berry overheard these conversations, he often told Cooper to stop talking. Cooper said that Berry told him to shut up almost every day, (Cooper Depo., No. 61-2 at 21), which Berry denies. (Berry Depo., No. 61-1 at 28-29). Instead, Berry says he respectfully asked Cooper to "keep it down a little bit so we don't have everybody griping" about his religious speech. (Id. at 28-29). According to Berry, he was compelled to intervene on behalf of other employees who complained about Cooper. (Id.)

In 2015, Cooper was transferred or relocated[1] to Fairgrounds Park in North St. Louis City. As of the filing of this suit, Cooper continued to work at Fairgrounds Park in the same role he had in the Forest Park location. Cooper argues that he was relocated to Fairgrounds Park because of his religious beliefs. Both parties agree that the Fairgrounds Park supervisor Fred Quinn raised the idea of exchanging workers. (Defendant's Statement of Undisputed Material Facts, No. 47 at ¶ 12; Plaintiff's Statement of Facts, No. 61 at ¶ 12). One of Quinn's employees was having difficulty with a supervisor, and Quinn wanted to avoid conflict between those

---

[1] The parties disagree on the terminology of this event. (Defendant City of St. Louis's Response to Plaintiff's Additional Statement of Uncontroverted Material Facts, No. 64 at ¶ 40). For the purposes of this memorandum and order, I evaluate Cooper's claims not based on the terminology of this event, but instead based on the applicable case law concerning adverse employment actions.

employees. When Berry heard Quinn's proposal, he suggested that Cooper be the Forest Park employee transferred to Fairgrounds Park.

In the time period before he was relocated, Cooper claims that he was subject to harassment based on his religious beliefs. Berry or his subordinates allegedly threatened to fire Cooper "every day" if he didn't stop talking about God. (Cooper Depo., No. 61-2 at 103). Coworker Terrence Brown corroborated these claims, saying that "Berry literally told Rodney Cooper if he didn't stop praying he would get fired on the spot." (Affidavit of Terrence Brown, No. 61-9). In addition to these threats, Berry admits that he called Cooper "Reverend Rodney" several times, (Berry Depo, No. 61-1 at 26-27), and he allegedly called Cooper bipolar more than once, (Cooper Depo, No. 61-2 at 29), and retarded a few times. (Id. at 30-31). Berry allegedly said some of these insults in the context of statements about religion such as "[w]hat are you doing, getting ready to pay your tithes out of your check?" (Id. at 29). Other non-supervisory employees allegedly called Cooper "preacher man" on a regular basis and in a way that Cooper found insulting. (Id. at 61-62). In defense of himself, Berry denies that he made any threat to fire Cooper, that he called Cooper retarded or bipolar, or that he told Cooper to shut up in the mornings before work started. (Berry Depo, No. 61-1 at 5).

Cooper also claims that he was excluded from advancement opportunities because of his religious beliefs. He says that he stopped receiving discretionary overtime for smaller events in 2013 and that he still is not selected for overtime for those events. (Cooper Depo, No. 61-2 at 46, 104). If Cooper requested overtime for an event that would be held on a Sunday, Berry would allegedly tell him "No. You need to go to church." (Id. at 49). In contrast, Cooper claims that Berry only gives discretionary overtime to a small group of people that he liked. (Id. at 48, 58-59). These same workers are informally designated as "crew leaders" a position that Cooper

says he was excluded from. (Id. at 57-59). Cooper does receive overtime hours for larger events where all utility employees are expected to be on hand. Overall, the City's annual payroll records indicate that Cooper worked 70.5 overtime hours in 2012, 34.5 overtime hours in 2013, and 64.5 overtime hours in 2014. (Plaintiff's Statement of Facts, No. 61 at ¶ 49; Annual Payroll Records, No. 47-5). No other overtime records were provided by either party.

Cooper alleges that, as a result of these events, he suffered mental anguish, anxiety, depression, embarrassment, and lack of enjoyment of life. (Cooper Depo., No. 61-2 at 85-96). He says he is "jumpy," no longer feels comfortable taking walks in the park, and is generally depressed although feels as though he is slowly recovering from these events. He alleges that he was "humiliated" and embarrassed before his fellow employees. To treat his anxiety, he says he has taken prescribed medicines and began seeing a counselor.

Based on these circumstances and events, Cooper filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Missouri Commission on Human Rights on December 24, 2015. (No. 47-3). The Department of Justice issued Cooper a right-to-sue letter on August 31, 2016. (No. 27-1). Cooper filed this complaint on September 26, 2016, and amended his complaint on March 24, 2017. (No. 1, 27). In his amended complaint, Cooper asserts claims for religious discrimination under Title VII of the Civil Rights Act of 1964 and under 42 U.S.C. § 1981. (No. 27 at 3-4).

Defendant City moves for summary judgment, arguing a) that Cooper has shown no direct evidence of discrimination, b) that he suffered no adverse employment action, c) that in the alternative, he has not shown that his adverse action was the product of discriminatory intent, and d) that any claims of hostile work environment or retaliation should be dismissed for failure to exhaust available administrative remedies. (No. 46 at 3-6). In response, Cooper argues that

4

his relocation to Fairground Park and alleged loss of overtime were adverse employment actions motivated by discriminatory intent, and that the hostile work environment claim was properly exhausted in his original EEOC complaint. (No. 62 at 4-6).

## LEGAL STANDARD

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see also Fed R. Civ. P. 56(a). I "must view the evidence in the light most favorable to the opposing party" and draw "reasonable inferences" in favor of that party. Tolan v. Cotton, 134 S. Ct. 1861, 1866-68 (2014). "The basic inquiry is… whether it is so one-sided that one party must prevail as a matter of law." Diesel Machinery, Inc. v. B.R. Lee Industries, Inc., 418 F.3d 820, 832 (8th Cir. 2005). At one time, Eighth Circuit jurisprudence held that "summary judgment should seldom be used in employment-discrimination cases … ." Crawford v. Runyon, 37 F.3d 1338 (8th Cir. 1994), abrogated by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011).[2] ("Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant."). The Eighth Circuit now holds, however, that there is "no discrimination case exception to the application of summary judgment." Torgerson, 643 F.3d at 1043.

---

[2] Both parties cite Crawford on this point but fail to acknowledge that the Eighth Circuit's view has changed on this question. (See No. 62 at 3; No 63 at 1).

5

## ANALYSIS

### A. 42 U.S.C. § 1981

Cooper's amended complaint states that "[this] action is brought pursuant to [Title VII] and 42 U.S.C. § 1981." He seeks "declaratory relief, backpay, frontpay[,] and compensatory damages because of [the City] subjecting [Cooper] to a *racially* [sic] *environment* and denying [him] [the] same terms and benefits of employment it afforded . . . its other employees." (No. 27 at 1-2) (emphasis added). This is the sole mention of race in the record; it appears in no other brief, nor in the parties' depositions. Cooper offers no further evidence in support of his claim that Berry was motivated by racial animus.

Section 1981 provides in pertinent part that "[all] persons within the jurisdiction of the United States shall have… the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). It has no applicability to allegations of religious discrimination. I therefore grant summary judgment on Count II of Cooper's amended complaint.

### B. Title VII Employment Discrimination

To establish a prima facie case of Title VII discrimination, a plaintiff must offer proof that he "(1) is a member of a protected class, . . . (2) that an adverse employment action was taken against [him]," and (3) that the circumstances surrounding the action raise at least "an inference of unlawful discrimination." Johnson v. Legal Servs. of Arkansas, Inc., 813 F.2d 893, 896 (8th Cir. 1987). A plaintiff may prove these elements through direct evidence. Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1017 (8th Cir. 1999). If a plaintiff cannot provide direct

evidence of discrimination, he must satisfy the McDonnel Douglas burden-shifting analysis.[3] Id. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

For either the "direct evidence" or McDonnel Douglas alternatives, the plaintiff must establish that he suffered an adverse employment action that produced a "material employment disadvantage." Cross v. Cleaver, 142 F.3d 1059, 1073 (8th Cir.1998). Under this test, "[t]ermination, cuts in pay or benefits, and changes that affect an employee's future career prospects" qualify as an adverse employment action. Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1016–17 (8th Cir. 1999). In contrast, "[m]inor changes in duties or working conditions" or any change "that cause[s] no materially significant disadvantage" do not. Id.

To support his claim that he suffered an adverse employment action, Cooper argues that he has lost opportunities for overtime work both before and after his relocation to Fairgrounds Park. (No. 61-2 at 46-48 (before relocation); No. 62 at 5 (after relocation)). He argues that the loss of overtime and the relocation itself constitute adverse employment actions. (No. 62 at 5). A relocation or transfer does not, on its own, establish that an adverse employment action has occurred. Spears v. Missouri Dept. of Corrections and Human Resources, 210 F.3d 850, 853 (8th Cir. 2000). Specifically, '[a] transfer involving only minor changes in working conditions and no reduction in pay or benefits will not constitute an adverse employment action[.]'" Id. Overtime pay, however, is an aspect of "pay or benefits" the loss of which can constitute an adverse employment action. See Harris v. Potter, 2007 WL 2994368 at *5 (E.D. Mo. 2007).

---

[3] Under McDonnel Douglas, a plaintiff may only prevail on a Title VII claim if he first establishes a prima facie case by a preponderance of the evidence. Johnson, 813 F.2d 893, 896. The defendant then has the burden to rebut that evidence by providing a legitimate, nondiscriminatory reason for the adverse employment action. Id. Finally, the plaintiff may still prevail in such a circumstance if he proves that the stated reason is pretextual. Id.

7

Cooper offers no evidence to establish that his overtime pay or opportunities decreased when he started talking about religion or after he was relocated to Fairgrounds Park. In contrast, the City demonstrates that Cooper worked 70.5 overtime hours in 2012, 34.5 overtime hours in 2013, and 64.5 overtime hours in 2014. (Plaintiff's Statement of Facts, No. 61 at ¶ 49; Annual Payroll Records, No. 47-5). This evidence shows that Cooper's overtime hours were about the same before and after he started talking about religion at work, in 2012 and 2014 respectively. Neither Cooper nor the City establish the amount of overtime hours that Cooper worked after his relocation; Cooper makes no comparison between his pre- and post-relocation overtime in his deposition; and Cooper offers no other evidence that his relocation affected his "future employment opportunities" or otherwise resulted in a "material employment disadvantage." Kerns, 178 F.3d at 1016–17. As a result, Cooper has provided insufficient evidence to prove that he suffered an adverse employment action. He has not met his burden to establish a prima facie case of Title VII discrimination, either with direct evidence or under the McDonnel Douglas burden shifting test.

### C. Administrative Exhaustion

The City argues that Cooper has not exhausted his administrative remedies for his hostile work environment claim or his retaliation claim, because he did not formally assert these claims in his initial complaint to the EEOC. The Eighth Circuit views "[e]xhaustion of administrative remedies [as] central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices" and thereby obtain voluntary compliance. Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994). To meet this requirement, a plaintiff must "(1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge . . . (2) receive notice of the right to sue," Id. (citing 42

U.S.C. § 2000e–5(b), (c), (e),) and actually file suit within 90 days, 42 U.S.C. § 2000e–5(f)(1). A plaintiff must exhaust administrative remedies for each claim that he presents to the court, but he need not spell out each claim in exacting detail in the EEOC charge. Williams v. Little Rock Mun. Water Works, 21 F.3d at 222. Instead, "[a] plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC." Id.

Retaliation claims, however, are not reasonably related to underlying discrimination claims. Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 852 (8th Cir. 2012). Although, requiring additional EEOC charges may seem to be a "needless procedural barrier," especially for retaliation claims arising from the plaintiff's initial charge, the Eighth Circuit is resolute on this requirement. Id. Cooper did not mention any retaliation nor check the box for retaliation in his EEOC charge. As a result, he has not exhausted his administrative remedies with respect to his retaliation claim, and I will grant summary judgment on his retaliation claim.

In contrast, Cooper's hostile work environment claim is part and parcel of his discrimination claim. Both claims arise from the same incidents, and in his EEOC charge, Cooper references "harassment" twice. The full text of Cooper's initial charge of discrimination is as follows:

> I was hired with the above referenced Respondent on 9-12-2011, as a Utility Worker. Beginning in or about 2013, I was subjected to harassment by my Supervisor, Roger Berry, regarding my Religious Beliefs.
>
> In early 2015, I was out of work due to a Workers Compensation Injury. When I returned in September 2015, I was transferred to another department. Co-workers told me Roger was trying to get rid of me.

9

> I believe I was harassed and transferred because of my religious beliefs, in violation of Title VII of the Civil Rights of 1964, as amended.

(No. 47- 3).

In this text, Cooper identifies the harassment and relocation in separate paragraphs. In the third paragraph, Cooper explains that both were motivated by his religious beliefs. Harassment allegations are a basis for hostile work environment claims. See, e.g., Faragher v. City of Boca Raton, 524 U.S. 775, 786, (1998). As a result, I find that Cooper's hostile work environment claim is "reasonably related to the substance of charges timely brought before the EEOC." Williams, 21 F.3d at 222. The EEOC's issuance of his right-to-sue letter represented the administrative exhaustion of Cooper's hostile work environment claim, and I have jurisdiction to consider that claim.

### D. Title VII Hostile Work Environment

To prevail on a hostile work environment claim, Cooper must show that "(1) he is a member of a protected class, (2) he was subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic under Title VII, (4) the harassment affected a term, condition or privilege of employment," and (5) that the employer can be held liable for the actions of the harassing party. Al-Zubaidy v. TEK Industries, Inc., 406 F.3d 1030, 1038 (8th Cir. 2005). This test, and the "terms and condition" requirement in particular, is "demanding." Id. A hostile work environment is created only when the plaintiff suffers "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. Instead, the work environment "must be both [an] objectively

subjectively offensive one that a reasonable person would find hostile or abusive." Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998).

In applying this test, I must consider all relevant circumstances. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002). Those circumstances include "[1] the frequency of the discriminatory conduct; [2] its severity; [3] whether it is physically threatening or humiliating, or a mere offensive utterance; and [4] whether it unreasonably interferes with an employee's work performance." Id. at 116. Because I am ruling on a motion for summary judgment, I must evaluate these factors to determine whether there is any genuine issue of material fact. Specifically, I must consider whether Cooper has presented facts with which a jury could find that a hostile work environment existed.

In support of his hostile work environment claim, Cooper offers evidence that he was threatened with his job, insulted in front of his coworkers with religious undertones, and told to "shut up" every day of work. In coworker Terrence Brown's recounting, "Berry literally told Rodney Cooper if he didn't stop praying he would get fired on the spot." (Affidavit of Terrence Brown, No. 61-9). Berry allegedly made these threats on a daily basis, in conjunction with calling Cooper "Reverend Rodney," "bipolar," and "retarded," sometimes in front of coworkers. (Berry Depo, No. 61-1 at 26-31). As evidence that these events were subjectively offensive, Cooper claims that he sought treatment for depression and anxiety, including medication and professional counseling. Coworker Aubrey Tutwiler also stated that Cooper "felt threatened by Berry and feared for his job." (Affidavit of Aubrey Tutwiler, No. 61-5). As evidence that the work environment was objectively offensive, Terrence Brown stated that "Roger Berry mistreated so many employees that no one wanted to work in the Parks and Recreation Department." (Affidavit of Terrence Brown, No. 61-9).

As stated, these alleged facts are sufficient to support a finding of intimidation that is sufficiently "severe" and "pervasive" to alter the terms and conditions of employment. See Al-Zubaidy v. TEK Industries, Inc., 406 F.3d 1030, 1038 (8th Cir. 2005). A jury may find that Berry's threats were severe, in part because they allegedly intimidated Cooper into fearing for his job. (Affidavit of Aubrey Tutwiler, No. 61-5). Terrence Brown's statement that "Berry literally told Rodney Cooper if he didn't stop praying he would get fired on the spot," supports this interpretation of the work environment. (Affidavit of Terrence Brown, No. 61-9). Berry's other statements appear "frequent" or "pervasive," in fulfillment of the second factor mentioned in National R.R. Passenger Corp. v. Morgan. 536 U.S. 101, 116 (listing "frequency," "severity," "physically threatening or humiliating," and "unreasonable interference with employee's work performance). Specifically, Cooper alleges that Berry told him to shut up every day, (Cooper Depo., No. 61-2 at 21), that his job was threatened all the time, (Cooper Depo., No. 61-2 at 103), and that he was insulted in various other instances. Accordingly, the "frequency," and "severity," of the alleged insults weigh in favor of denying summary judgment.

The other two factors from National R.R. Passenger Corp. v. Morgan are less convincing. 536 U.S. 101, 116. For one, some of Berry's objectionable statements may be merely offensive utterances on their own instead of "physically threatening or humiliating." See id. "Reverend Rodney," "bipolar," or "retarded," are generally offensive, but one must look to the context of these statements to determine whether they are "humiliating." Berry has provided limited context for a jury to make that determination. In one instance, Berry allegedly called Cooper "bipolar" in his office before asking, "What are you doing, getting ready to pay your tithes out of your check?" (Cooper Depo, No. 61-2 at 29). A jury may find that this statement was humiliating, but the context weighs against such a finding. Specifically, Berry made this comment in the privacy

12

of his office, instead of in front of other coworkers. Finally, Cooper puts forth no evidence to prove that Berry's statements unreasonably interfere with his work.

Nonetheless, considering all the facts in the light most favorable to Cooper, I cannot say as a matter of law that Berry did not subject Cooper to unwelcome harassment based on Berry's religious beliefs, and that the harassment "affected a term, condition or privilege of employment." The frequency, severity, and alleged impact of these threats and insults support the inference that they may affect a term or condition of employment. See Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998) ("[T]he scope of the prohibition covers more than terms and conditions in the narrow contractual sense."). As a result, I will deny the City's motion for summary judgment on Cooper's hostile work environment claim.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (Doc. 45) is **GRANTED** in part and **DENIED** in part. Summary judgment is granted on Cooper's retaliation, Title VII discrimination, and 42 U.S.C. § 1981 claims. Summary judgment is denied on Cooper's Title VII hostile work environment claim.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of June, 2018.